IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DARRYL STEVENSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 3:10-0053** |
| ) | **Judge Trauger** |
| **JEFF LONG, in his official capacity as** ) | |
| **Williamson County Sheriff, and** ) | |
| **SOUTHERN HEALTH PARTNERS,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

In this suit, *pro se* plaintiff Darryl Stevenson, a prisoner at the Williamson County Jail in Franklin, Tennessee, alleges that he was denied adequate medical treatment during his imprisonment. Defendant Jeff Long, who was sued in his official capacity as Williamson County Sheriff, filed a Motion for Summary Judgment (Docket No. 60), and defendant Southern Health Partners filed both a Motion to Dismiss (Docket No. 57) and a Motion for Summary Judgment (Docket No. 73). These motions were referred to the Magistrate Judge. On January 18, 2011, the Magistrate Judge filed a Report and Recommendation (Docket No. 80) recommending that the court grant the defendants' motions and dismiss the plaintiff's claims. The plaintiff did not file any timely objections, so, on March 1, 2011, this court entered an Order accepting the Report and Recommendation and dismissing the case (Docket No. 88).

On March 9, 2011, the plaintiff filed a belated "Response and Objection" to the Report and Recommendation (Docket No. 91). In a letter to the court received March 1, 2011, the plaintiff claimed that he had not received a copy of the Report and Recommendation until

February 23, 2011.[1]  (Docket No. 87; *see also* Docket No. 91 at 9 ("My mail just caught up with me last week, please accept these late file[d] pleadings.").)  Given the plaintiff's mail problems, the court will treat the plaintiff's filing as timely and hereby **VACATES** the Order accepting the Report and Recommendation (Docket No. 88).  For the reasons discussed below, however, the Objections will be overruled.  In addition, the plaintiff's pending Motion to Appoint Counsel (Docket No. 92) will be denied.

## BACKGROUND

The plaintiff suffers from a variety of medical conditions, including HIV, hepatitis C, and neuropathy, which causes numbness and pain in his legs and feet.[2]  He was arrested in August 2009 and was initially held at the Marshall County Jail.  He was then transferred to the Williamson County Jail (the "Jail") on September 15, 2009.  Defendant Southern Health Partners ("SHP") provides medical services to the Jail's inmates, pursuant to a contract with Williamson County.  Dr. Charles Sidberry, an employee of SHP, is the Medical Director of the Jail, and several licensed nurses work on the Jail's medical staff.

On September 15, 2009, Dr. Sidberry ordered that the plaintiff receive four drugs – Truvada, Lexiva, Norvir, and Isentress, all of which the plaintiff had received at the Marshall County Jail – to treat his HIV.  On September 16, 2009, the plaintiff underwent an initial medical

---

[1] Although the docket contains a certified mail receipt on January 19, 2011, it was signed by Daniel B. – who, presumably, is a prison employee – not by the defendant.  (Docket No. 82.)  The clerk's office made at least two more attempts to send the Report and Recommendation to the defendant via certified mail.  (*See* Docket Nos. 84, 86.)

[2] Unless otherwise noted, the facts are drawn from the Magistrate Judge's Report and Recommendation and from the parties' various filings.

2

screening, at which point the Jail's medical staff noted that he had been exposed to HIV and hepatitis C. The plaintiff claims that he mentioned during this screening that he suffered from neuropathy, but none of the forms completed by the Jail's medical staff mention that condition. (Docket No. 73, Ex. 3 ¶ 6 (affidavit of nurse Candy Roberts).) Notably, a screening form and medical questionnaire, both of which were signed by the plaintiff, list his HIV, hepatitis C, and panic attacks, but not his neuropathy. (*Id.*, Ex. 4 at 8-9.) On September 19, 2009, the Jail received medical records from the plaintiff's previous healthcare provider, Regional Medical Center in Memphis. These records also failed to state that the plaintiff suffered from neuropathy.[3] (*Id.* at 13-26; *Id.*, Ex. 2 ¶ 9 (affidavit of Dr. Sidberry).) On September 25, 2009, the plaintiff underwent a medical history and physical. Again, the forms completed by the medical staff did not contain any mention of neuropathy. (*Id.*, Ex. 4 at 31 ("Master Problem List" listing only HIV, hepatitis C, hypertension, and a history of acid reflux); *id.* at 34-35 (medical history and physical forms mentioning numerous medical problems, but not neuropathy).)

Inmates at the Jail can submit "sick-call" slips to request medical care. The record reveals that the plaintiff filed a number of sick-call slips, and that, each time, the medical staff responded in a timely manner. For example, on September 17, 2009, he completed a slip complaining of anxiety attacks; the next day, he was evaluated by nurse Sharon Norris, who reviewed relaxation techniques with him. (*Id.*, Ex. 4 at 10-11.) On September 23, 2009, the

---

[3] The plaintiff believes that these records mentioned his neuropathy, but he does not point to any particular document.

plaintiff completed a slip complaining of depression, but he later refused treatment. (*Id.* at 29.) On October 25, 2009, the plaintiff completed an "inmate request" form, requesting that he have lab work done. The medical staff responded that, under Jail policy, chronic care begins after the inmate has been at the Jail for three months and that the plaintiff would undergo lab work at that time. (*Id.* at 42.)

On November 15, 2009, the plaintiff completed a form requesting that he be moved to a lower bunk "[due] to a medical condition, listed in [his] medical records." (*Id.* at 43.) Staff nurse Candy Roberts responded that he did not meet the Jail's protocol for medical placement in a bottom bunk. The protocol requires that, to qualify for assignment to a lower bunk, an inmate must have one of the following conditions: seizures, pregnancy, a back surgery in the past six weeks, any surgery in the past two weeks, an acute injury, or morbid obesity. (*Id.*, Ex. 3 ¶ 14 (affidavit of Roberts).) Because the plaintiff had none of these conditions, he did not qualify.

On November 16, 2009, the plaintiff filed his initial Complaint in this action, alleging that the Jail had failed to properly treat his neuropathy. (Docket No. 1.) The Complaint was premised on the allegations that he was forced to sleep in the top bunk of his cell's bed and that the Jail failed to provide him with orthopedic shoes. (*Id.*) On November 24, 2009, the plaintiff filed a grievance form with the Jail, stating that he was previously diagnosed with neuropathy and that numbness in his lower extremities necessitated his placement in a lower bunk. (*Id.*, Ex. 5 at 26.) Notably, the grievance form only mentioned numbness, not pain. The counselor who reviewed the form responded that this was a medical issue and that he would forward the form to the medical staff. Ultimately, the plaintiff was never assigned to a lower bunk.

4

Pursuant to the Jail's policy, the plaintiff underwent a complete metabolic profile on December 15, 2009, three months after his arrival at the Jail. The next day, Dr. Sidberry ordered that the plaintiff be placed on an HIV/AIDS individual treatment plan. Pursuant to that plan, the plaintiff was seen at the Comprehensive Care Clinic in Nashville on January 4 and February 26, 2010. After his second visit, the clinic recommended that the plaintiff begin receiving the drug Neurontin to treat his neuropathic pain. The plaintiff received that medication until he was transferred out of the Jail on March 17, 2010.

After his first appointment at the clinic, the plaintiff continued to complain of intermittent medical problems. For example, on January 26, 2010, he completed a sick-call slip complaining that a drug reaction had caused rashes, hives, and warts. (Docket No. 73, Ex. 5 at 15). Medical records indicate that the plaintiff saw Dr. Sidberry the next day, that the plaintiff was diagnosed with folliculitis and an allergic reaction, and that he was prescribed several drugs.[4] (*Id.*; *id.*, Ex. 2 ¶ 20.) The plaintiff claims that this treatment was ineffective. On February 11, he submitted a request form complaining of a swollen ear and a rash. In response, the nurse gave him packets of hydrocortisone cream and offered him Benadryl, which the plaintiff refused. (*Id.*, Ex. 5 at 42.)

The plaintiff filed a verified Amended Complaint on February 2, 2010, alleging that he had not yet seen a professional healthcare provider regarding his maladies. (Docket No. 11 at 5.)

---

[4] According to the plaintiff, Dr. Sidberry initially refused to see him, and he was taken instead to a clinic. (Docket No. 91 at 4.) He claims that the doctor eventually saw him on January 18, at which time he was prescribed medication. (*Id.*) This contradicts the plaintiff's sick-call slip, however, which was signed and dated January 26, 2010. In any event, the plaintiff acknowledges that he received medication to treat the condition.

He filed another pleading on April 13, 2010 that essentially reiterated his allegations. (Docket No. 44.)

In addressing the defendants' motions for summary judgment, the Magistrate Judge construed the plaintiff's pleadings as asserting claims for (1) inadequate medical care under 42 U.S.C. § 1983 and the Eighth Amendment and (2) medical malpractice. The Magistrate Judge determined that the § 1983 claim was premised on both the allegedly inadequate care for the plaintiff's HIV infection and on the defendants' refusal to assign him to a lower bunk. (Docket No. 80 at 5-6.) The Magistrate Judge concluded that, given the extensive medical care received by the plaintiff, he had failed to show that the defendants were deliberately indifferent to his chronic medical conditions. (*Id.* at 6.) The Magistrate Judge also found that the plaintiff failed to show that he had a serious medical need for placement in a lower bunk and that, consequently, his § 1983 claims should be dismissed. (*Id.* at 8.) Finally, the Magistrate Judge found that the pendent state-law malpractice claims should be dismissed for lack of jurisdiction. (*Id.* at 9.)

In response, the plaintiff has filed Objections to the Report and Recommendation and a Motion to Appoint Counsel.

## **ANALYSIS**

Rule 72 permits a party to "file specific written objections" to a magistrate judge's report and recommendation on a dispositive motion. Fed. R. Civ. P. 72(b)(2). The district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

The plaintiff's Objections consist of two parts – a handwritten declaration summarizing

6

his version of the facts, titled "Statement of Response and Objection to Report and Recommendation" (Docket No. 91 at 1-7), and a typed document containing legal argument, titled "Motion for Continuance and Memorandum of Points and Authorities in Support Thereof" (*id.* at 16-20). In the latter document, the plaintiff makes two arguments: (1) that he can establish both the objective and subjective components of his deliberate-indifference claim; and (2) that the defendants' dispositive motions should be continued so that he can conduct depositions. (*Id.*) The court will construe the plaintiff's filing as specifically objecting to the Magistrate Judge's determination that the plaintiff failed to show that the defendants acted with deliberate indifference.[5]

Thus, the court will review that determination *de novo*. Fed. R. Civ. P. 72(b)(2). The defendants filed their summary judgment motions pursuant to Rule 56, which requires the court to grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all

---

[5] The plaintiff's contention that he needs a continuance so that he can depose the defendants (*see* Docket No. 91 at 18-19) is meritless. The Scheduling Order in this case, which was entered on March 10, 2010, set a discovery deadline of July 9, 2010. (Docket No. 26.) The proper time to seek an extension of the discovery deadline was before the passage of that deadline, not eight months after.

7

inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," however, and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Section 1983 allows a plaintiff to sue for deprivation of constitutional rights. 42 § U.S.C. 1983. The plaintiff here alleges that the defendants violated his Eighth Amendment rights by: (1) generally failing to provide adequate medical care; and (2) refusing to assign him to a lower bunk.

The Sixth Circuit has, in a case involving a prison's refusal to assign an inmate to a lower bunk, summarized the relevant case law regarding Eighth Amendment claims:

> Inmates seeking to show an Eighth Amendment violation resulting from inadequate medical care must prove that the defendants acted with "deliberate indifference" regarding an imminent risk of serious harm to the inmate. In addition, claims of deliberate indifference require "a showing of objective and subjective components." The objective component of the test requires a plaintiff to demonstrate "a 'sufficiently serious' medical need such that [the plaintiff] is 'incarcerated under conditions posing a substantial risk of serious harm.'" The subjective component requires a showing that prison officials acted with "'a sufficiently culpable state of mind in denying medical care,'" *i.e.*, "a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"

*Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir. 2009) (citations omitted) (alteration in original).

Here, regardless of the objective component of the deliberate-indifference test, the plaintiff cannot fulfill the subjective component. First, the record makes it clear that the plaintiff received timely care regarding his HIV and his various other medical problems. He received HIV medication upon arriving at the jail, and, in accordance with the Jail's policy, he underwent full lab work three months after his arrival. After that lab work was complete, the plaintiff saw specialists at an outside clinic twice in two months. Furthermore, the Jail's medical staff responded promptly to his numerous sick-call slips; for example, it is undisputed that he saw a doctor and received medication in response to his outbreak of rashes and hives. This extensive, ongoing care shows that the defendants were not culpably ignoring the plaintiff's chronic medical conditions. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Bisgeier v. Mich. Dep't of Corr.*, 380 Fed. Appx. 505, 508 (6th Cir. 2010) (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)) (alteration in original).

Second, the plaintiff is similarly unable to show that the defendants' refusal to assign him to a lower bunk constituted deliberate indifference. In his Objections, the plaintiff claims that "[j]umping up and down to bunk was painful" because of his neuropathy, and he contends that he can "establish through his medical records" that he suffered from leg pain. (Docket No. 91 at 3, 18.) But there is no evidence that he alerted the defendants to such pain in advance of his February 26, 2010 clinic visit, at which point he was prescribed medication to treat his neuropathy. The November 24, 2009 grievance form that the plaintiff filed with the Jail stated

9

only that he experienced *numbness* – not pain – in his lower extremities. (Docket No. 73, Ex. 5 at 26; *see also* Docket No. 1 at 2 (initial Complaint, which generally alleged that the plaintiff suffered pain but specifically alleged that "neuropathy causes numbness in [his] lower extremities").) The plaintiff's medical records indicate that, before November 24, he never mentioned neuropathy, much less neuropathic pain severe enough to require a bottom bunk, and that the medical staff did not observe such pain.[6] Nor, apparently, did the plaintiff mention neuropathic pain during his December 15 lab work, his January 4 appointment at the clinic, or his January 27 visit with Dr. Sidberry. Furthermore, there is no evidence that the plaintiff suffered any physical injury as a result of climbing to the top bunk.

In sum, nothing indicates that the defendants acted culpably when they refused to assign the plaintiff to a lower bunk. *See Robbins*, 351 Fed. Appx. at 63 (concluding that the defendants lacked culpable intent because the doctor "had examined [the plaintiff] and concluded that his condition did not mandate assignment to a bottom bunk" and because "[n]on-medical staff are entitled to assume that members of the medical staff are performing their duties properly"). Accordingly, the plaintiff's § 1983 claims must be dismissed.[7]

---

[6] In light of the documentary evidence, a reasonable juror could not credit the plaintiff's claims to the contrary. The intake forms completed upon the plaintiff's arrival at the Jail mentioned numerous health problems, but not neuropathy or leg pain. In particular, the Medical Staff Receiving Screening Form, which the plaintiff signed, confirmed that "all stated chronic conditions [were] noted" but did not mention neuropathy. (Docket No. 73, Ex. 4 at 8.) Nor did the medical records from the plaintiff's previous healthcare provider mention neuropathy. A reasonable juror could not conclude that the plaintiff discussed neuropathy during these visits but that this was somehow omitted from the records.

[7] As the Magistrate Judge concluded, it is appropriate to dismiss the plaintiff's pendent state-law malpractice claims for lack of subject-matter jurisdiction. 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Risser v. Metro. Gov't of Nashville & Davidson County*, No. 3:09-0386, 2009 U.S.

Finally, the court will deny the plaintiff's Motion to Appoint Counsel.[8] "Courts should request counsel for pro se civil plaintiffs only in 'exceptional circumstances.'" *Cleary v. Mukasey*, 307 Fed. Appx. 963, 965 (6th Cir. 2009) (quoting *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Furthermore, "[c]ourts should not appoint counsel when the claims are frivolous or when the chances of success are extremely slim." *Id.* (quotation marks omitted). Here, there appear to be no exceptional circumstances, and the plaintiff's claims are meritless.

## CONCLUSION

For the reasons stated herein, the plaintiff's Objections (Docket No. 91) are **OVERRULED**, and his Motion to Appoint Counsel (Docket No. 92) is **DENIED**. The Report and Recommendation (Docket No. 80) is **ACCEPTED**. For the reasons expressed therein and herein, it is hereby **ORDERED** that the Motion to Dismiss filed by defendant Southern Health Partners (Docket No. 57), the Motion for Summary Judgment filed by defendant Jeff Long (Docket No. 60) and the Motion for Summary Judgment filed by defendant Southern Health Partners (Docket No. 73) are all **GRANTED**, and the plaintiff's federal claims against the defendants are **DISMISSED** with prejudice. It is further **ORDERED** that the remaining state-law claims against defendant Southern Health Partners are **DISMISSED** for lack of jurisdiction. Entry of this Order shall constitute the judgment in this case.

---

Dist. LEXIS 58673, at *15 (M.D. Tenn. July 7, 2009) (noting the "broad discretion" that federal district courts have in dismissing state-law claims when all federal claims have been dismissed); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (stating that "the balance of considerations usually will point to dismissing the state law claims").

[8] At the outset of this case, the Magistrate Judge and Judge Echols (who was formerly assigned to this case) both declined to appoint counsel for the plaintiff. (Docket Nos. 39, 40.)

It is so Ordered.

Entered this 28th day of March 2011.

_____
ALETA A. TRAUGER
United States District Judge